**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Fred Stevens
Brendan M. Scott
Christopher J. Reilly

*Proposed Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                                         :
                                                                                  :    Chapter 11
ADVANCED CONTRACTING SOLUTIONS, LLC, :
                                                                                  :    Case No. 17-13147 (SHL)
                                      Debtor.                         :
---------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING PAYMENT OF PRE-PETITION WAGES, EMPLOYEE BENEFITS AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND DIRECTING BANKS TO HONOR CHECKS WITH RESPECT THERETO, AND (III) APPROVING PAYMENT OF POST-PETITION WAGES, EMPLOYEE BENEFITS AND EXPENSE REIMBURSEMENT**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

Advanced Contracting Solutions, LLC, the debtor and debtor-in-possession (the "Debtor") hereby submits this motion (the "Motion") for entry of interim and final orders pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Rule 6003 of the Federal Bankruptcy Rules (i) authorizing, but not requiring, payment of prepetition wages, employee benefits and expense reimbursement, (ii) authorizing and directing banks to honor checks with respect thereto, and (iii) authorizing, but not requiring, payment of post-petition wages, employee benefits and expense reimbursement. In support of this Motion, the Debtor relies on the *Declaration of Jeffrey T. Varsalone Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11*

*Petitions and First Day Motions* (the "Varsalone Declaration"), submitted contemporaneously herewith, and in addition, respectfully states as follows:

## PRELIMINARY STATEMENT

The Debtor is a large open-shop concrete foundation and concrete super-structure contractor. On average, the Debtor employs approximately 450 persons – 20 full-time salaried employees, and 430 hourly employees. In the ordinary course of business, the Debtor issues weekly payroll to employees. The weekly pay period runs from Wednesday through Tuesday inclusively. Employees are paid every Friday for the preceding Wednesday through Tuesday. Because the Petition Date falls within the current payroll period, the Debtor's employees are owed monies by the Debtor on account of pre-petition services rendered. Accordingly, the Debtor requires authority from this Court to make payroll in the ordinary course, which is absolutely necessary to maintain the Debtor as a going concern.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue of this proceeding and of this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a), 363, 364(b), 507(a)(5) and 541(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, et. seq. (the "Bankruptcy Code").

## BACKGROUND

4. On November 6, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code commencing the above-captioned

Chapter 11 cases (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

5. The Debtor remains in possession of its assets and continues to manage its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No trustee or committee has been appointed in this case.

7. A detailed description of the Debtor's business and the facts precipitating the filing of the Bankruptcy Case are set forth in the Varsalone Declaration. Those facts are incorporated herein by reference.

### A.  Debtor's Workforce

8. As set forth in the Varsalone Declaration, the Debtor has approximately four-hundred and fifty (450) employees, consisting of twenty (20) full-time salaried employees (the "Salaried Employees") and four-hundred and thirty (430) hourly employees (the "Hourly Employees" and collectively with the Salaried Employees, the "Employees").

### B.  Debtor's Employee Compensation Obligations

9. In the ordinary course of business, the Debtor issues weekly payroll to Employees. The weekly pay period runs from Wednesday through Tuesday inclusively. Employees are paid every Friday for the preceding Wednesday through Tuesday. Because the Petition Date falls within the current payroll period, the Debtor's Employees are owed monies by the Debtor on account of pre-petition services rendered.

10. The Debtor did not make any payments to its Employees immediately prior to the Petition Date on account of wages earned during the period from November 1, 2017 through November 7, 2017. Consequently, the Debtor is seeking authority to pay all compensation earned but not paid during the period of November 1, 2017 through Petition Date. The Debtor

believes the total amount of gross unpaid wages, inclusive of employee benefits and payroll taxes for the period from November 1, 2017 through November 7, 2017 is approximately $710,000.00, a portion of which is outstanding as of the Petition Date (the "Prepetition Wages"). None of the amounts to be paid to any single employee for the period noted above will exceed the $12,850.00 priority cap in section 507(a)(4) of the Bankruptcy Code.

### C.     Gross Payroll Deductions, Taxes and Governmental Withholdings

11.     Upon the culmination of each payroll cycle, certain amounts are deducted from each of the Employees' paychecks to account for (i) federal, state and local tax withholdings laws and (ii) pre- and after-tax deductions pursuant to employee benefit plans (described below under "Employee Benefits").

12.     The Debtor is required by law to withhold from the Employees' wages amounts related to federal and state taxes, social security and Medicare taxes (collectively, the "Trust Fund Taxes"), and to remit the Trust Fund Taxes to the appropriate taxing authorities (collectively, the "Taxing Authorities"). Additionally, the Debtor is obligated to match from its own funds the social security and Medicare taxes and to remit to the Taxing Authorities, based on a percentage of gross payroll, additional amounts for state and federal unemployment insurance (collectively, the "Employer Payroll Taxes" and, together with the Trust Fund Taxes, the "Payroll Taxes"). The Payroll Taxes on average total approximately $220,000.00 per pay period. The Debtor believes it is current on its pre-petition Payroll Taxes obligations but for the amounts due for the period from November 1, 2017 through Petition Date (the "Pre-Petition Payroll Taxes"), and therefore hereby seeks authority to pay Pre-Petition Payroll Taxes.

D.   **Employee Benefits**

   a.  **Medical Benefits**

13.   In the ordinary course of the Debtor's business, the Debtor provides Employees with access to medical benefits. Health insurance is provided by Medova ("Health Insurance"), while dental ("Dental Insurance") and vision insurance ("Vision Insurance") are provided by United Health (collectively the "Medical Benefits"). All Employees are offered access to Medical Benefits, the costs of which are deducted from their Prepetition Wages. The Debtor, however, does pay 50% of the cost of Health Insurance for Salaried Employees only. Dental and Vision Insurances are paid directly by Employees.

14.   The Debtor's contribution to Salaried Employees' Health Insurance costs, in any given month total approximately $11,717.27 (the "Health Insurance Contributions"). The Debtor makes such contributions on the 1st of each month. A payment in the amount of $11,717.27 for the month of November 2017 was due on November 1, 2017. The Debtor did not make the required payment for November 2017 prior to the Petition Date and hereby seeks authority to pay the outstanding $11,717.27 Health Insurance Contribution and to continue to pay the Health Insurance Contributions in the ordinary course in the future.

   b.  **Paid Time Off**

15.   The Debtor maintains a paid time off policy for Salaried Employees only. Salaried Employees are entitled to 14 days away from work with pay to be used for vacation, sick or personal days ("PTO Days" and collectively with the Employee Insurance Benefits, the "Employee Benefits"). The Debtor offers PTO Days in addition to paid federal holidays. As of the Petition Date, the Debtor does not have any unpaid PTO Days on its books. The Debtor

requests that it be authorized, but not directed, to honor its PTO Days policy post-petition in the ordinary course of business.

### E. Employee Expense Reimbursements

16. Prior to the Petition Date and in the ordinary course of its business, the Debtor reimbursed its Employees for certain expenses incurred in the scope of their employment or services performed. Reimbursable expenses consist of expenses relating to, inter alia, business related travel expenses, business meals, phone costs and miscellaneous business expenses (collectively, the "Reimbursable Expenses").

17. Any Reimbursable Expenses are incurred on the Debtor's behalf and with the understanding that they will be reimbursed in the normal course.

18. As of the Petition Date, the Debtor owes Employees approximately $25,000 on account of expenses incurred prior to the Petition Date (the "Pre-Petition Reimbursable Expenses"). The Debtor hereby seeks authority to pay the Pre-Petition Reimbursable Expenses. The Debtor also seeks authority to pay Reimbursable Expenses, incurred after the Petition Date, in the ordinary course of business.

### RELIEF REQUESTED AND BASIS THEREOF[1]

19. By this Motion, the Debtor requests, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, entry of an order (i) authorizing, but not requiring, the Debtor to pay, in its sole discretion, (a) approximately $710,000 in Prepetition Wages, including without limitation, the Pre-Petition Payroll Taxes and Employee Benefits, and (b) $25,000 in Pre-Petition

---

[1] The relief requested herein is made to the extent the Court approves the Debtor's motion for entry of the Interim Order Pursuant to 11 U.S.C. §§ 361, 362 and 363 and Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtor's Use of Cash Collateral, (II) Providing Adequate Protection Thereof and (III) Scheduling a Final Hearing (the "Cash Collateral Motion"), filed contemporaneously herewith, along with a related Approved Budget (as defined in the Cash Collateral Motion).

Reimbursable Expenses (collectively, the "Employee Obligations"), and costs incident to the foregoing, (ii) authorizing and directing banks to honor checks with respect thereto, and (iii) authorizing, but not requiring payment of post-petition wages and employee benefits as they were in effect as of the Petition Date, and as such may be modified, amended, or supplemented from time to time in the ordinary course.

20. Because the Petition Date falls prior to Friday, which is the day on which the Debtor customary pays its employees for the most recently completed payroll period, the Debtor's employees are owed monies by the Debtor on account of pre-petition services rendered. By this Motion, the Debtor seeks to pay Employee Obligations owed to its employees prior to the Petition Date in the amounts set forth herein.

21. To avoid the significant risks of employees refusing to continue to work for the Debtor or discontent or loss of morale among essential employees, and in view of the priority awarded to wage claims, it is necessary and appropriate that the Debtor be granted the requested authorization.

22. The Debtor requires the continued services of its employees in order to ensure that the continuity and quality of its business operations will not be threatened and so that the Debtor may continue, without unnecessary interruption, its efforts to achieve a successful reorganization.

23. The Debtor submits the relief sought herein is authorized pursuant to section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," and further justified by the Court's broad equitable powers under section 105 of the Bankruptcy Code.

24. Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "[i]ssue any order, process or judgment that is necessary or appropriate to carry out the provisions of . . ." the Bankruptcy Code. As one court observed:

> The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept. It was first articulated by the United States Supreme Court in Miltenberger v. Logansport, C. & S.W. R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882) and is commonly referred to as either the "doctrine of necessity" or the "necessity of payment" rule. This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.

In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989). Accord In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (quoting In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (the "necessity of payment" doctrine permits immediate payment of claims to creditors who will not supply services or material essential to the debtors' business until their pre-petition claims are paid)).

25. Application of the "necessity of payment" doctrine here establishes that the Debtor should be authorized to honor the Employee Obligations. See Mich. Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279-285-86 (S.D.N.Y. 1987), appeal dismissed 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits). This doctrine is consistent with the paramount goal of chapter 11 of "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.

26. If the Debtor is not authorized to pay the Employee Obligations, its relationship with the Employees will be adversely affected and the Employees' morale, dedication,

confidence, and cooperation might be compromised irreparably. The Employees' support for the Debtor's efforts during this case is critical and cannot be jeopardized. Allowing the Debtor to honor the Employee Obligations in the ordinary course will instill confidence in the Employees that the Debtor is in a position to satisfy, and intends to satisfy, its post-petition payroll and related obligations and will ensure the Debtor has a sufficient support system in which to operate and that the Debtor can successfully execute its strategy in Chapter 11 to continue operating as a going concern.

27.     The amount to be paid to any Employee for the pre-petition period will not exceed the $12,850.00 cap contained in Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. In addition, payment of the Debtor's pre-petition payroll obligations will not prejudice other creditors of the Debtor's estate as the Employees are entitled to priority status under Section 507(a)(4) and 507(a)(5) of the Bankruptcy Code with respect to such obligations and payment in full pursuant to a Chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(B).

28.     With respect to the Pre-Petition Payroll Taxes, the payment of such taxes also will not prejudice the Debtor's other creditors as the relevant Taxing Authorities generally would hold priority claims under Section 507(a)(8) of the Bankruptcy Code with respect to such obligations and are entitled to payment in full pursuant to a Chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(C). Moreover, the portion of the Pre-Petition Payroll Taxes withheld from the Employees' wages on behalf of the applicable Taxing Authority (as well as the other deductions) are held in trust by the Debtor. As such, that portion of the Pre-Petition Payroll Taxes (as well as the other deductions) is not property of the Debtor's estate under Section 541 of the Bankruptcy Code. See, e.g., Begier v. IRS, 496 U.S. 53 (1990).

29.    In other chapter 11 cases, courts in this District have approved payment of prepetition claims for compensation and expense reimbursements similar to those described herein. See, e.g., In re Chassix Holdings, Inc., Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. April 10, 2015); In re The Great Atlantic & Pacific Tea Company, Inc., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 13, 2011); In re Uno Restaurant Holdings Corp., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 17, 2010); In re Finlay Enterprises, Inc., Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 3, 2009); In re General Motors Corp., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009); In re U.S. Shipping Partners L.P., Case No. 09-12711 (RDD) (Bankr. S.D.N.Y. Apr. 30, 2009); In re General Growth Properties, Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. May 11, 2009); In re Bearing Point, Inc., Case No. 09-10691 (REG) (Bankr. S.D.N.Y. March 13, 2009); In re Tronox Inc., Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Feb. 6, 2009); In re Lyondell Chemical Co., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 26, 2009); In re Lenox Sales, Inc., Case No. 08-14679 (ALG) (Bankr. S.D.N.Y. Nov. 25, 2008); In re Steve & Barry's Manhattan LLC, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. July 10, 2008); In re Lexington Precision, Case No. 08-11153 (MG) (Bankr. S.D.N.Y. April 2, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 24, 2008); In re Silicon Graphics, Inc., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 10, 2006).

30.    Accordingly, by this Motion, the Debtor seeks authority pursuant to sections 105(a) and 363(b) of the Bankruptcy Code to pay Employee Obligations as they become due and owing during the pendency of this case and to continue, uninterrupted, its practices, programs and policies with respect to its employees, as such practices, programs, and policies were in effect as of the Petition Date.

**NOTICE**

31.     Notice of this Motion will be given to: (a) the Office of the U.S. Trustee (Attn: Richard Morrissey, Esq.); (b) all required governmental entities; (c) counsel for Signature Bank, N.A., the Debtor's secured pre-petition lender; and (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors (collectively, the "Notice Parties").

## NO PRIOR REQUEST

41.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

**WHEREFORE**, for all the foregoing reasons, the Debtor respectfully requests entry of an Order, substantially in the form annexed hereto as Exhibit A, granting the Motion and such other further relief as the Court deems just and equitable.

Dated:  New York, New York
        November 6, 2017

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:  */s/ Fred Stevens*
     Tracy L. Klestadt
     Fred Stevens
     Brendan M. Scott
     Christopher J. Reilly
     200 West 41st Street, 17th Floor
     New York, New York 10036-7203
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: tklestadt@klestadt.com
            fstevens@klestadt.com
            bscott@klestadt.com
            creilly@klestadt.com

     *Proposed Attorneys for Debtor and Debtor in possession*