| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>In re:<br><br>ADVANCED CONTRACTING SOLUTIONS, LLC,<br><br>Debtor. | Chapter: 11<br><br>Case No.: 17-13147 (SHL) |

**Creditors Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund's Opposition and Objection to Debtor's First Day Emergency Motion and Motion for Entry of Interim and Final Orders**

1. Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila (replaced by Trustee Darin Jeffers as of January 1, 2017), Michael O'Toole, Michael Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson, and Thomas Corbett (collectively the "Gesualdi Plaintiffs"), as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds") make this objection to the Motion for Entry of Interim and Final Orders: (I) Authorizing Payment of Pre-Petition Wages, Employee Benefits and Expense Reimbursement, (II) Authorizing and Directing Banks to Honor Checks With Respect Thereto, and (III) Approving Payment of Post-Petition Wages, Employee Benefits and Expense Reimbursement (Docket ECF No. 4, hereinafter the "Motion").

2. The Court, respectfully, should condition any order approving the use of cash collateral by Debtor on the Debtor submitting monthly remittance forms to the Funds showing the names and hours of post-petition work performed by drivers and others covered by the collective bargaining agreement between the Debtor's alter ego Navillus Tile, Inc., d/b/a Navillus Contracting and the Building Material Teamsters Local 282, IBT ("Local 282").

A copy of the collective bargaining agreement, which continues through at least 2019, is annexed hereto at Exhibit A. The 9/22/17 Decision of the District Court holds the Debtor is an alter ego of Navillus Tile, Inc.[1] The Debtor, due to its status as an alter ego of Navillus Tile, Inc., is bound to the collective bargaining agreement with Local 282 until at least 2019. The collective bargaining agreement contains language requiring the Debtor to submit remittance forms and make employee benefit fund contributions for work covered by the collective bargaining agreement, which includes any truck driving work performed by the Debtor in New York City.

3. Prior to permitting use of cash collateral, the Court should order the Debtor to make monthly payments to the Funds for those employees performing post-petition work covered by the collective bargaining agreement, as the benefits constitute post-petition administrative expenses.[2] The Debtor appears to have sufficient cash available to pay the Funds post-petition administrative claims if the Court determines the Funds claims should be paid each month. To allow the Debtor use of cash collateral to pay other administrative expenses (*e.g.* health, dental, vision insurance for other employees, see Debtor's Motion, p. 5) without paying the Funds does not maintain the Funds' administrative claim on equal footing with the administrative claims of other creditors. To the extent a secured party objects to the Funds' request for monthly payments, the Court should overrule the objection, as immediate payment of the Funds' post-petition

---

1 The District Court determined "ACS was set up as, and at all relevant times was, Navillus' alter ego." *See* 9/22/17 Decision, p. 55 attached at Exhibit B.

2 "[S]uch contributions to a pension plan are 'for the benefit of the estate' and allowed administrative claims pursuant to 11 U.S.C. § 503(b)(1)(a)(i). *See Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986)." *In Re Hostess Brands, Incec., et al., Debtors*, 2012 WL 3253051 (Bkrtcy. S.D.N.Y.) (brackets added).

employee benefit fund administrative claims is in the best interest of the estate and therefore all the creditors including the secured creditors. The Court should also condition any order granting the use of cash collateral on the Debtor submitting to a semi-annual Funds audit, so the Gesualdi Plaintiffs can confirm the Debtor is abiding by its contractual requirement to make post-petition payments to the Funds. The Debtor's budget fails to include post-petition administrative expense payments to the Funds for trucking and other work provided to the Debtor. The Funds contributions accruing post-petition are administrative expenses because they arise from post-petition work creating an obligation to make payment to the Funds. The Motion asks this Court to consider a budget that makes no provision for payment of the administrative expense claims of the Funds. The Motion improperly treats this category of administrative expense as inferior to other administrative expenses. The Court should not grant the motion unless the relief requested in the motion is amended to treat all administrative expenses equally.

4. The Debtor's emergency motion Official Form 204 does not reference the Funds as one of the 20 largest creditors. The Debtor lists a judgment amount of $73,393,081.15. This fails to include the portion of the judgment in favor of the Funds and against ACS for $1,603,783.61, representing unpaid fringe benefit contributions, interest and liquidated damages. Judgment, p. 4. A copy of the 9/25/17 judgment is annexed at Exhibit C.

5. The Funds oppose the Debtor's Cash Management Motion to the extent it requests permission to utilize existing Debtor bank accounts and not close existing accounts and establish DIP accounts. The Debtor's current bank accounts should be closed and DIP account(s) established to insure that the financial institution responsible for the DIP account(s) agrees to comply with the reporting and collateralization requirements of the

United States Trustee and 11 U.S.C. § 345, that no other individuals previously having access to the Debtor's bank accounts have access to the Debtor-in-Possession funds, and that the US Trustee has the right to access the accounts and receive account statement copies. Debtor's Cash Management Motion does not address the possibility of the account balances exceeding the insured and collateralization requirements of the financial institution. The FDIC insurance may be insufficient protection for the account balances. A DIP account is also required to seek court approval for any activities outside of the ordinary course of business. This condition should be on any account approved by the Court for use by the Debtor. Finally, the Court should require a DIP account as the "DIP" designation on the check puts those in receipt of the check on notice they are doing business with an entity in bankruptcy.

6. For the foregoing reasons the creditors Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund object to Debtor's pending motions and request that approval of the motions be conditioned on the Debtor making monthly post-petition employee benefit fund contributions to the Funds and submitting remittance reports for individuals performing work covered by the Local 282/Navillus

collective bargaining agreement and a DIP account, together with requesting such other relief the Court deems proper.

        Respectfully submitted,

        TRIVELLA & FORTE, LLP

        */s/Christopher Smith*

        Christopher Smith

*Attorneys for the creditors Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund*

1311 Mamaroneck Avenue

White Plains, New York 10605

914-949-9075