**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                   :
                                                        :           Chapter 11
ADVANCED CONTRACTING SOLUTIONS LLC, :
                                                        :           Case No. 17-13147 (SHL)
                    Debtor.                             :
----------------------------------------------------------------x

**EMERGENCY INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND RULES 4001(b), 4001(d) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION THEREOF AND (III) SCHEDULING A FINAL HEARING**

This matter having come before the Court upon the motion (ECF No. 3, "Motion") of the Advanced Contracting Solutions, LLC (the "Debtor"), the debtor in the above-captioned Chapter 11 case (the "Case"), for interim and final orders pursuant to sections 105, 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "Motion"), seeking, inter alia:

(1) authorization for the Debtor to use Cash Collateral in accordance with the Budget (as such terms are defined below);

(2) the grant of adequate protection to Signature Bank as the Debtor's Prepetition Lender ("Prepetition Lender") with respect to any Diminution in Value (as defined below) of the Prepetition Lender's interests in the Prepetition Collateral (as defined below), from the use of the Cash Collateral;

(3) the scheduling of a final hearing (the "Final Hearing") on the Motion to be held within 20 days after entry of the entry of this Interim Order to consider entry of a

final order (the "Final Order") authorizing the Debtor's use of the Cash Collateral and granting the adequate protection described herein.

The Court having considered the Motion, the Declaration of Jeffrey T. Varsalone, Chief Restructuring Officer of the Debtor Containing Information Required Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtor's First Day Motions [ECF No.2], the exhibits attached thereto, and the evidence and arguments submitted at the emergency interim hearing held on November 8, 2017 (the "Interim Hearing"); and adequate notice of the Interim Hearing having been provided in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court as set forth below; and capitalized terms used but not defined herein having the respective meanings ascribed to such terms in the Motion; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending a further interim hearing and Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor and its estate; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

    A.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. This Court has exclusive jurisdiction over the Debtor's property, including the Cash Collateral (defined below) at issue in this Motion, pursuant to 28 U.S.C. §1334(e)(1).  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for

2

the relief sought herein are sections 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b), 4001(d) and 9014 and Local Rule 4001-2.  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    *Commencement of Case*.  On November 6, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing this Case.  The Debtor is continuing in the management and operation of its business and property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.  As of the date of this Interim Order, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Case (any such committee, the "Creditors' Committee").

C.    *Debtor's Stipulations*.  The Debtor admits, stipulates, acknowledges and agrees that the following facts and conclusions of law are true, accurate and complete (the following paragraphs (C)(i) through (C)(vi) are collectively defined as the "Debtor's Stipulations"):

(i)    *Prepetition Facility*.  Pursuant to that certain Line of Credit Letter Agreement, dated as of April 25, 2017[1] (as amended, restated, supplemented or modified from time to time, the "Prepetition LOC Agreement," and together with all related loan and security documents, as the same may have been amended, restated, supplemented or modified from time to time, the "Prepetition LOC Documents"), among the Debtor and Prepetition Lender, the Prepetition Lender provided the Debtor with a secured revolving line of credit (the "Prepetition LOC").

---

[1] Although the line of credit letter agreement is dated April 7, 2017, the signature page indicates that the agreement was executed on April 25, 2017.

3

(ii) *Prepetition Obligations*. As of the Petition Date, the Debtor was indebted to the Prepetition Lender, in respect of loans made in the aggregate principal amount under the Prepetition LOC of not less than $1,800,000.00 (collectively, the "Prepetition Obligations").

(iii) *Prepetition Collateral*. To secure the Prepetition Obligations, the Debtor granted to Prepetition Lender a first priority security interest in and lien upon (the "Prepetition Liens") all "Collateral" under and as defined in the Prepetition LOC Documents (the "Prepetition Collateral").

(iv) *Validity of Prepetition Liens and Prepetition Obligations*. Subject to the rights of any Creditors' Committee and any other party in interest with requisite standing to challenge the Prepetition Lender's liens or claims, as set forth in Paragraph 11 herein, (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable and duly perfected; (b) the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, and (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor, enforceable in accordance with the terms of the Prepetition LOC Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(v) *Cash Collateral.* All of the Debtor's cash and cash equivalents, including the cash in its deposit accounts, security deposits, wherever located and whenever acquired, whether in the form of cash, profits, accounts receivable, whether as original Prepetition Collateral or proceeds of other Prepetition Collateral, now in the possession, custody or control of the Debtor or persons in privity with the Debtor, or on which the Debtor will obtain an interest during the pendency of this Case, constitutes cash collateral in which Prepetition Lender has asserted and maintains a first priority security interest and lien for purposes of and

4

within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(vi) *Prepetition Lender Priority over Subsequent Judgment Creditor Claims.* Prior to the Petition Date, on September 22, 2017, a judgment was entered against the Debtor and others in the United States District Court for the Southern District of New York in the amount of $73.4 Million (the "Judgment"). On or about November 1, 2017, Prepetition Lender was served with certain Restraining Notices pursuant to CPLR §5222(b) (the "Restraining Notices"). In light of, among other things, the Prepetition Liens to Collateral held by Prepetition Lender, Prepetition Lender asserts and Debtor agrees that the Prepetition Lender's position to the Collateral holds priority over any subsequent judgment creditor claims to any of the Debtor's property, including the Collateral and Cash Collateral. This Court has exclusive jurisdiction over the Cash Collateral pursuant to 28 U.S.C. §1334(e)(1).

D. *Need for Use of Cash Collateral.* An immediate and critical need exists for the Debtor to use the Cash Collateral to continue to operate its businesses in the ordinary course, pay wages, maintain business relationships with customers, vendors and suppliers, make payroll, pay professionals, make adequate protection payments and to generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets. The Debtor cannot use the Cash Collateral without the consent of the Prepetition Lender or Order of the Bankruptcy Court.

E. *Business Judgment and Good Faith.* Good cause has been shown for entry of this Interim Order. The relief requested herein is necessary, essential and appropriate to aid the continuation of the Debtor's operations and the preservation and maintenance of its assets and business, absent which the Debtor's ability to maximize the value of its estate for the benefit of its creditors will be irreparably jeopardized, and the Debtor's customers will be significantly

and adversely impacted. The authority granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to, and is therefore in the best interests of, the Debtor and its creditors and estate.

    F. *Adequate Protection*. The Prepetition Lender is entitled to receive adequate protection of its interests in the Cash Collateral to the extent of any diminution in value from and after the Petition Date resulting from (a) the use of the Cash Collateral, (b) the use, sale, lease or depreciation or other diminution in the value of the Prepetition Collateral or (c) as a result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code (collectively, the "Diminution in Value").

    G. *Notice*. Notice of the Interim Hearing on the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier and/or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (v) counsel to the Prepetition Lender for itself and the Prepetition Lender; and (vi) all other parties required to receive notice pursuant to Bankruptcy Rule 4001 or requesting to receive notice prior to the date hereof.

    H. *Entry of this Interim Order*. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

    Based upon the foregoing findings and conclusions, the Motion and the record made before this Court, and good and sufficient cause appearing therefor:

  **IT IS HEREBY ORDERED** that:

1. <u>Recitals Incorporated</u>. Recitals A through H of this Interim Order are incorporated herein by referenced as if fully set forth herein.

2. <u>Authorization to Use Cash Collateral</u>. The Motion is granted on an interim basis on the terms set forth herein. Subject to the terms and conditions of this Interim Order, the Debtor is authorized to use the Cash Collateral, solely up to the amounts, at the times, in accordance with and for the purposes identified in the Budget (as defined below), other than payment or accrual of professional fees, until the Termination Date (as defined below) (the "<u>Interim Budget</u>"). Debtor shall provide prior notice to Prepetition Lender with respect to specific payments to be made in accordance with the Budget and must obtain Prepetition Lender's written consent to same, which consent shall not be unreasonably delayed or withheld. Debtor's use of Cash Collateral and Prepetition Lender's consent to use of Cash Collateral in accordance with this Interim Order or any Final Order authorizing use of Cash Collateral shall not constitute a violation of the Restraining Notices or any other pre-petition claims asserted against Cash Collateral by any subsequent judgment creditors. Nothing in this Interim Order shall authorize the use, sale, lease, encumbrance or disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted herein and in accordance with the Interim Budget. The Debtor is expressly prohibited from using the Cash Collateral other than as expressly contemplated in this Interim Order.

3. <u>Objections Overruled</u>. All objections to the interim relief sought in the Motion to the extent not withdrawn or resolved are hereby overruled.

4. <u>Use of Cash Collateral</u>. The Debtor may use Cash Collateral from the date hereof to the earlier of (a) November 22, 2017, *i.e.,* one day following the next hearing on the

7

Motion, or (b) thirty (30) days from entry of this Interim Order (the "Termination Date"), in accordance with the Interim Budget and pursuant to the notice and consent requirements set forth in paragraph 2 of this Order. On the Termination Date, the Debtor's right to use Cash Collateral shall automatically cease, absent further Order of this Court.

        5.     Continuation of Prepetition Procedures. The Debtor shall continue its existing cash management system, and all of the Debtor's deposit accounts and amounts on deposit therein shall be subject to the Prepetition Liens and the Adequate Protection Liens (as defined below).

        6.     Budget. The Cash Collateral provided by the Prepetition Lender to the Debtor shall at all times be used in accordance with the Interim Budget. The Budget is defined as follows:

        (a)     Generally. Attached hereto as Exhibit A is a 13-week budget (as it may be amended from time to time with the consent of the Prepetition Lender, the "Budget") which reflects on a lumped line-item basis the Debtor's actual and anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur on a weekly basis starting on the Petition Date. The Budget shall be used by the Prepetition Lender and the Debtor for purposes of testing the variances set forth in subparagraph (b) below. It is expressly understood that the Prepetition Lender has not consented to the Budget set forth at Exhibit A and has instead consented only to use of Cash Collateral, other than for accrual and payment of professional fees, only up to the Termination Date and sent under the notice and approval procedures set forth in paragraph 2 of this Order. The holders of the Judgment reserve their right to contest the proposed Budget on any and all grounds

8

including their contention that it should include administrative payments to such benefit funds.

(b)     Budget Reporting.  The Debtor shall provide to the Prepetition Lender, so as to actually be received by the Prepetition Lender within three (3) business days following the end of every other week, bi-weekly line-by-line variance reports, for the preceding bi-weekly period and on a cumulative basis for the period from the Petition Date to the report date, comparing actual specified cash receipts and specified disbursements to lumped amounts projected in the Budget.

(c)     Budget Covenants.  Absent the written consent of the Prepetition Lender, the cumulative aggregate cash operating disbursements by the Debtor on a weekly basis must be no greater than 5% more than the cumulative aggregate amount thereof projected for such week as set forth in the Budget, (the "Permitted Variance").

7.     Adequate Protection Liens.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Lender in the Cash Collateral to the extent of any Diminution in Value, the Prepetition Lender, is hereby granted continuing, valid, binding, enforceable and automatically perfected postpetition additional and replacement security interests in and liens and mortgages on the Prepetition Collateral and proceeds thereof (collectively, the "Adequate Protection Liens") as follows:

(a)     a first priority perfected security interest in, and lien and mortgage on, all Collateral, whether arising prepetition or postpetition, that is not already subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date and;

9

(b)     a junior perfected security interest in and lien and mortgage on all Collateral, whether arising prepetition or postpetition, that is subject to (i) a valid, perfected, enforceable and unavoidable consensual lien or security interest in existence on the Petition Date or (ii) a valid and unavoidable consensual lien or security interest in existence on the Petition Date that is perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Adequate Protection Liens shall be senior to any other liens, including, without limitation, any other adequate protection replacement liens.  The Adequate Protection Liens shall not be secured by any avoidance actions under Chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").

8.      <u>Adequate Protection Payments and Protections</u>.  As further adequate protection, the Debtor shall pay $50,000 per week to the Prepetition Lender in reduction of the principal Prepetition Obligations, plus approximately $9,000 per month in interest.  The Debtor shall provide to the Prepetition Lender such reports and information as may be reasonably requested by the Prepetition Lender.  In addition, the Prepetition Lender shall have the right, upon reasonable notice to the Debtor, at any time during normal business hours, to inspect, audit, examine, check, and make copies of, and extract non-privileged information from, the Debtor's records and to obtain company information from the Debtor's management, and the Debtor shall make its records and management available to the Prepetition Lender for such purposes.  Further, the Debtor authorizes its crisis manager and consultants to cooperate, consult with, and provide to the Prepetition Lender all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

9.      <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms, rights, benefits, privileges, remedies and provisions of this Interim Order without further notice to any party or motion or application to, order of, or hearing before this Court.

10. <u>Perfection of Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, without limitation, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Lender to the priorities granted herein.

11. <u>Carve-Out</u>.

(a) As used in this Interim Order, the "<u>Carve-Out</u>" means: (i) the quarterly fees and interest thereon required to be paid pursuant to 28 U.S.C. §1930(a)(6); (ii) any fees payable to the Clerk of the Court; and (iii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $10,000.

12. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. Nothing herein shall prejudice the rights of any party in interest with requisite standing, within the later of sixty (60) days of entry of a Final Order authorizing use of Cash Collateral or seventy-five (75) days if no Creditors' Committee is appointed (the "<u>Challenge Period</u>"), to: (i) seek to object to or to challenge the findings herein, the Debtor's Stipulations, or any other stipulations herein, including, but not limited to, those in relation to (A) the validity, extent, priority, characterization or perfection of the security interests and liens of the Prepetition Lender

11

with respect to the Prepetition Collateral, or (B) the validity, allowability, priority, characterization, secured status or amount of the Prepetition Obligations evidenced by the Prepetition LOC Documents; or (ii) otherwise assert any claim or cause of action, including, without limitation, any derivative action, against the Prepetition Lender. To the extent no challenge is brought within the Challenge Period, any such claims shall be deemed waived and barred.

13.     <u>Reservation of Rights by Liberty Mutual Insurance Company and Prepetition Lender</u>.  Notwithstanding anything contained herein to the contrary, Liberty Mutual Insurance Company ("<u>Liberty</u>") asserts that:

(i)     To the extent that any post-petition collateral consists of the proceeds of any of Debtor's construction contracts that have been bonded by Liberty, the Adequate Protection Liens are subordinate to the payment of valid New York Lien Law Article 3-A trust fund obligations with respect to bonded contracts; and

(ii)    Nothing herein shall preclude, impair, or prejudice the rights, claims, remedies and/or defenses of Liberty under applicable law, including, but not limited to, its right to assert an equitable lien against the proceeds of ACS's projects that have been or may be bonded by Liberty and Liberty's rights of equitable subordination.

The Prepetition Lender disputes Liberty's assertions and each of the parties reserves their respective rights and remedies with respect to the foregoing.

14.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the

12

entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Prepetition Lender's right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of the Prepetition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request a modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request modified or additional adequate protection; (iii) request dismissal of the Case, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Lender.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's, any Creditors' Committee's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Nothing in this Interim Order shall be construed as or deemed to constitute the consent of the Prepetition Lender to the use, sale or lease of the Prepetition Collateral, including the Cash Collateral, on any terms other than as expressly provided herein.

15. <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Prepetition Lender to seek relief or otherwise exercise their rights and remedies under the Prepetition LOC Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Lender.

16. <u>Binding Effect of Interim Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Prepetition Lender, all other creditors of the Debtor, any

13

Creditors' Committee or other committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other estate representative appointed in this Case or any successor case.

17. <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case; (d) approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code; or (e) pursuant to which this Court abstains from hearing the Case.  Notwithstanding the entry of any such order, the terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Lender pursuant to the Prepetition LOC Documents, shall continue in full force and effect in the Case and shall maintain their priority until the Prepetition Obligations have been fully paid to Prepetition Lender and otherwise satisfied in full.

18. <u>Scheduling of Second Interim Hearing Hearing</u>.  A hearing to consider entry of a further interim order and schedule a Final Hearing is scheduled for November 21, 2017, at 11:00 a.m. before the Honorable Sean H. Lane, United States Bankruptcy Judge, on the 7th floor, in Courtroom 701, at the United States Bankruptcy Court for the Southern District of New York (the "<u>Second Interim Hearing</u>").  On or before November 9, 2017, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Second Interim Hearing (the "<u>Second Interim Hearing Notice</u>"), together with copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Creditors' Committee, if appointed by such date; and (d) any other party to

14

whom notice is required to be given pursuant to Bankruptcy Rules 2002 and 4001 and the Local Rules. The Second Interim Hearing Notice shall state that any party in interest objecting to the entry of the proposed second interim order must file written objections with the Clerk of the Court on or before November 16, 2017 at 5:00 p.m. (Eastern Time) and must serve such objections so that they are received on or before such date by: (i) counsel to the Debtor, Attn: Fred Stevens, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036-7203; (ii) counsel to any Creditors' Committee; (iii) counsel to the Prepetition Lender, Attn: John E. Westerman, Esq. and Mickee M. Hennessy, Esq., Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, 1201 RXR Plaza, Uniondale, New York 11556; and (iv); the Office of the United States Trustee for the Southern District of New York, Attn: Richard Morrissey, Esq., U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014.

19. *Nunc Pro Tunc* Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution by the parties and approval by the Court.

20. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: New York, New York
November 9, 2017

*/s/ Sean H. Lane*
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**ACS-NY, LLC**
**8 Week Cash Flow Forecast**

| Week Ended Friday: | Actual 1 11/3/2017 | Forecasted 2 11/10/2017 | Forecasted 3 11/17/2017 | Forecasted 4 11/24/2017 | Forecasted 5 12/1/2017 | Forecasted 6 12/8/2017 | Forecasted 7 12/15/2017 | Forecasted 8 12/22/2017 | 8 Week Total |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| **Collections** | $ 2,000 | $ 3,960,236 | $ 3,870,604 | $ 2,574,806 | $ 320,400 | $ 3,088,814 | $ 4,210,412 | $ 593,250 | $ 18,620,522 |
| **Operating Expenses:** | | | | | | | | | |
| Office Rent | - | 32,711 | - | - | - | 32,711 | - | - | 65,422 |
| Insurance - GL | - | - | - | - | - | 655,307 | - | - | 655,307 |
| Insurance - Auto | - | 12,457 | - | - | - | 12,457 | - | - | 24,915 |
| Insurance - WC | - | 19,534 | - | - | - | 171,500 | - | - | 191,034 |
| Officer Compensation | - | - | - | 25,000 | - | - | - | - | 25,000 |
| Net Payroll | 385,043 | 450,000 | 450,000 | 290,000 | 450,000 | 450,000 | 450,000 | 340,000 | 3,265,043 |
| Payroll Taxes & Related Benefits | 351,616 | 258,327 | 220,547 | 140,547 | 220,547 | 257,780 | 220,547 | 165,547 | 1,835,457 |
| Reimbursed Employee Expenses | - | - | - | - | - | - | 10,000 | - | 10,000 |
| Wells Fargo Note Pymts | - | 16,835 | - | - | - | 16,835 | - | - | 33,670 |
| Auto Lease Pymts (Automatic ACH) | 575 | - | - | 1,872 | 1,500 | - | - | 3,372 | 7,319 |
| Utilities | - | 6,000 | - | - | - | - | 6,000 | - | 12,000 |
| Job Cost Payables / General G&A Payables | 188,657 | 2,709,286 | 1,000,000 | 900,000 | 900,000 | 700,000 | 1,250,000 | 700,000 | 8,347,942 |
| Contingent / Other | - | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 350,000 |
| | 925,891 | 3,555,150 | 1,720,547 | 1,407,419 | 1,622,047 | 2,346,590 | 1,986,547 | 1,258,919 | 14,823,110 |
| **Cash Flow from Operations** | (923,891) | 405,086 | 2,150,057 | 1,167,387 | (1,301,647) | 742,224 | 2,223,865 | (665,669) | 3,797,412 |
| **Restructuring Expenses:** | | | | | | | | | |
| Professional Fees | 39,970 | 69,250 | 79,250 | 79,250 | 79,250 | 79,250 | 79,250 | 79,250 | 584,720 |
| UST Fees | - | - | - | - | - | - | - | - | - |
| LOC - Adequate Protection and Interest | 60,682 | 50,000 | 50,000 | 50,000 | 59,000 | 50,000 | 50,000 | 50,000 | 419,682 |
| Utilities Security Deposit | - | 12,000 | - | - | - | - | - | - | 12,000 |
| | 100,652 | 131,250 | 129,250 | 129,250 | 138,250 | 129,250 | 129,250 | 129,250 | 1,016,402 |
| **Net Cash Flow** | (1,024,543) | 273,836 | 2,020,807 | 1,038,137 | (1,439,897) | 612,974 | 2,094,615 | (794,919) | 2,781,010 |
| **Cash, Beginning of Period** | 1,149,384 | 124,841 | 398,677 | 2,419,484 | 3,457,621 | 2,017,724 | 2,630,698 | 4,725,313 | 1,149,384 |
| **Cash End of Period** | $ 124,841 | $ 398,677 | $ 2,419,484 | $ 3,457,621 | $ 2,017,724 | $ 2,630,698 | $ 4,725,313 | $ 3,930,394 | $ 3,930,394 |

**ACS-NY, LLC**
**8 Week Cash Flow Forecast**
**Detail of Cash Receipts**

|  | Actual 1 | Forecasted 2 | Forecasted 3 | Forecasted 4 | Forecasted 5 | Forecasted 6 | Forecasted 7 | Forecasted 8 |  |
|---|---|---|---|---|---|---|---|---|---|
| *Week End:* | **11/3/2017** | **11/10/2017** | **11/17/2017** | **11/24/2017** | **12/1/2017** | **12/8/2017** | **12/15/2017** | **12/22/2017** | **8 Week Total** |
| 1230-00 555 W. 21st Street | - | 125,003 | - | - | - | - | - | - | 125,003 |
| 1370-00 210 Livingston Street | - | - | 537,773 | - | - | - | 433,806 | - | 971,579 |
| 1400-00 Queens Plaza Tower B2 | - | 862,275 | - | - | - | 603,814 | - | - | 1,466,089 |
| 1450-00 101 Penn - Super | 2,000 | - | - | 10,000 | - | - | - | - | 12,000 |
| 1460-00 26 Ann Street | - | 185,447 | - | - | - | - | - | - | 185,447 |
| 1490-00 91 Leonard Street - Super | - | - | - | - | 50,400 | - | - | 96,250 | 146,650 |
| 1500-00 100 Varick Street | - | 2,787,511 | - | - | - | 2,485,000 | - | - | 5,272,511 |
| 1520-00 1059 3rd Ave - Foundation | - | - | - | 22,398 | - | - | - | - | 22,398 |
| 1530-00 1059 3rd Ave - Super | - | - | - | 1,125,400 | - | - | - | - | 1,125,400 |
| 1540-00 200 E. 21st Street | - | - | 575,505 | - | - | - | 517,861 | - | 1,093,366 |
| 1550-00 40 East End Avenue | - | - | 1,317,330 | - | - | - | 1,219,245 | - | 2,536,575 |
| 1560-00 1 Clinton Street - F | - | - | 1,340,496 | - | - | - | 1,962,000 | - | 3,302,496 |
| 1590-00 Hudson Park P3 | - | - | - | 1,089,882 | - | - | - | 270,000 | 1,359,882 |
| 1600-00 The Brearley School | - | - | - | 327,127 | - | - | - | 227,000 | 554,127 |
| 1610-00 Queens Plaza Tower B1 (Wall) | - | - | - | - | - | - | 77,500 | - | 77,500 |
| 1620-00 Trinity | - | - | - | - | 270,000 | - | - | - | 270,000 |
| 1640-00 11 Hoyt Street Tiebacks | - | - | 99,500 | - | - | - | - | - | 99,500 |
|  | 2,000 | 3,960,236 | 3,870,604 | 2,574,806 | 320,400 | 3,088,814 | 4,210,412 | 593,250 | 18,620,522 |

**ACS-NY, LLC**
**8 Week Cash Flow Forecast**
**Detail of Payroll Taxes & Related Benefits**

|  | Actual | Forecasted | Forecasted | Forecasted | Forecasted | Forecasted | Forecasted | Forecasted | |
|---|---|---|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | |
| Week End: | 11/3/2017 | 11/10/2017 | 11/17/2017 | 11/24/2017 | 12/1/2017 | 12/8/2017 | 12/15/2017 | 12/22/2017 | 8 Week Total |
| PR Tax - Federal & State | 351,616 | 220,000 | 220,000 | 140,000 | 220,000 | 220,000 | 220,000 | 165,000 | 1,756,616 |
| Health Ins | - | 34,805 | - | - | - | 34,805 | - | - | 69,610 |
| Dental | - | 2,428 | - | - | - | 2,428 | - | - | 4,855 |
| Garnishments Payable | - | 1,094 | 547 | 547 | 547 | 547 | 547 | 547 | 4,376 |
|  | 351,616 | 258,327 | 220,547 | 140,547 | 220,547 | 257,780 | 220,547 | 165,547 | 1,835,457 |

**ACS-NY, LLC**
**8 Week Cash Flow Forecast**
**Detail of Professional Fees**

|  | Actual 1 | Forecasted 2 | Forecasted 3 | Forecasted 4 | Forecasted 5 | Forecasted 6 | Forecasted 7 | Forecasted 8 | |
|---|---|---|---|---|---|---|---|---|---|
| *Week End:* | **11/3/2017** | **11/10/2017** | **11/17/2017** | **11/24/2017** | **12/1/2017** | **12/8/2017** | **12/15/2017** | **12/22/2017** | **8 Week Total** |
| Klestadt & Winters | 39,970 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 258,720 |
| CBIZ | - | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 196,000 |
| Westerman Ball | - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 70,000 |
| UCC | - | - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 60,000 |
|  | 39,970 | 69,250 | 79,250 | 79,250 | 79,250 | 79,250 | 79,250 | 79,250 | 584,720 |