| | |
|---|---|
| WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP<br>1201 RXR Plaza<br>Uniondale, New York 11556<br>(516) 622-9200<br>John E. Westerman, Esq.<br>Mickee M. Hennessy, Esq.<br>*Counsel to Signature Bank* | Hearing Date: November 21, 2017<br>Time:             11:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

In re:

ADVANCED CONTRACTING SOLUTIONS, LLC,

                        Debtor.

-------------------------------------------------------------------------x

Chapter 11

Case No.: 17-13147 (SHL)

## OBJECTION OF SIGNATURE BANK
## TO DEBTOR'S CONTINUED USE OF CASH COLLATERAL

Westerman Ball Ederer Miller Zucker & Sharfstein, LLP "WBEMZS"), as attorneys for Signature Bank ("Signature"), in opposition to the motion (ECF No. 3, the "Motion") of Advanced Contracting Solutions, LLC, as debtor and debtor in possession (the "Debtor") pursuant to sections 105, 361, 362 and 363 of Title 11, United States Code, §§101 *et seq.* (the "Bankruptcy Code"), Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 seeking, *inter alia*: (i) entry of an emergency interim order and a final order authorizing the Debtor to use cash collateral in accordance with an approved budget; (ii) grant of adequate protection to Signature; and (iii) scheduling a final hearing on the Motion, respectfully states as follows:

### PRELIMINARY STATEMENT

1. Signature was hopeful that, during the period between the emergency hearing held on November 8, 2017 and now, the parties would have been able to agree upon consensual terms and conditions for continued use of cash collateral, enhanced adequate protection payments to

-1-

Signature and on the specific components of Debtor's projected budget. Unfortunately, the Debtor has been unable to demonstrate to Signature's satisfaction that Signature is and will be adequately protected if the case proceeds and the Debtor utilizes Signature's cash collateral to operate. The Debtor has only provided a snapshot of expenses and revenue for budget purposes, without providing Signature with complete information, on a job by job basis, concerning the projected timing and anticipated net profits from each job, from which Signature can determine the viability and amount of monies that will actually be available to the Debtor, as cash collateral or otherwise, if the Debtor is able to continue in business.

2. The Debtor has also not identified how it will resolve the administrative expense issues raised by the Union Constituency (defined below), which calls in to question the administrative solvency of this Debtor. Nor have Debtor's principals offered to provide any additional collateral in support of their existing guaranties. If the Debtor's principals are unwilling to bet on the success of the Debtor, why should Signature? Signature reserves all of its rights and remedies in this regard.

## BACKGROUND

3. On November 6, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Prior to the Petition Date, the Debtor executed and delivered to Signature, among other documents, (a) a Line Letter Agreement dated April 7, 2017 executed and delivered by each of the Debtor and certain guarantors concerning a line of credit from the Bank to the Debtor in the original principal amount of $4,000,000.00 (the "Line Letter Agreement"), (b) a Promissory Note dated April 7, 2017 executed and delivered by Borrower to the Bank in the original principal amount of $4,000,000.00 (the "Promissory Note") and (c) a Continuing Security Agreement dated February 25, 2015 (the "Security Agreement"), wherein the Debtor granted to Signature first priority blanket liens and security interests in substantially

all of the Debtor's assets, including without limitation, cash and accounts receivable (as more particularly described and defined in the Security Agreement and related documents, the "Collateral"). The Line Letter Agreement, the Promissory Note, the Security Agreement and all other documents or amendments prepared in connection therewith are collectively referred to as the "Loan Documents."

4.  Events of Default occurred under the terms of the Loan Documents as a result of, among other things, a money judgment having been entered against the Debtor and others on or about September 22, 2017 in the aggregate amount of Seventy Six Million Two Hundred Twenty Two Thousand Seven Hundred Thirty Three and 32/100 Dollars ($76,222,733.32) (the "Judgment"). As of the Petition Date, the Debtor is indebted to Signature in the amount of $1,419,930.27, consisting of the principal balance of $1,419,309.32, and accrued, unpaid interest of $620.95 (together with all additional accrued and accruing interest, fees and expenses including attorneys' fees, the "Indebtedness").[1]

5.  On the Petition Date, the Debtor also filed the Motion (ECF No.4). This Court entered an order scheduled a hearing on shortened notice to consider, among other things, the Debtor's Motion, for November 8, 2017 (the "Interim Hearing") (ECF No. 5).

6.  On November 7, 2017, the self-described Moore Plaintiffs and Gesualdi Plaintiffs (together, the "Union Constituency") each filed Objections to the Motion (ECF Nos. 17 and 18 respectively). The gravamen of the Union Constituency objections is that the Debtor has not budgeted for accrual and payment of certain benefits in accordance with a certain collective bargaining agreement and asserting that such amounts are administrative expenses of the Debtor.

---

[1] Although the parties had indicated that $1.8 Million was due as of the Petition Date in prior pleadings, Signature had exercised its set-off rights in accordance with the Loan Documents such that the Indebtedness as of the Petition Date was actually $1,419,930.27. Notwithstanding line items contained in the Budget annexed to the Emergency Interim Order, Signature has not received any additional payments from the Debtor since the Petition Date.

-3-

7. Signature filed its own Response and Reservation of Rights on November 8, 2017 (ECF No. 24) raising its own concerns with respect to, *inter alia*, the Debtor's budget. Nevertheless, Signature consented to an Emergency Interim Cash Collateral Order, which was entered by the Court on November 9, 2017 (ECF No. 34). The current Termination Date (as defined in the Emergency Interim Cash Collateral Order) is November 22, 2017. Emergency Interim Cash Collateral Order at ¶4(a).

**RESPONSE**

8. Section 363(e) of the Bankruptcy Code provides in relevant part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

9. The most recent budget presented to Signature from the Debtor proposes a weekly $50,000.00 payment to Signature as adequate protection. That budget, however, calls for use of much more than that for expenses and also shows that the expenses will <u>exceed</u> revenue within the next five (5) weeks. Coupled with the lack of information concerning estimated time of job completion and the amount of anticipated profit on a job by job basis, the Debtor simply has not provided Signature (or this Court) sufficient facts from which to assess whether Signature is adequately protected.

10. This is even before consideration of the objections interposed by the Union Constituency. As set forth by the Debtor on the record at the Interim Hearing on November 8, 2017, <u>none</u> of the Debtor's pending jobs are profitable if the Union Constituency position is correct. As of now, Signature has not been advised of how the Debtor intends to address this contention.

11. Further, the Debtor's principals have not proposed to collateralize their pending guaranties as a backstop in the event it turns out that Signature has not been adequately protected by the Debtor. While Signature is sympathetic to the Debtor's attempts to remain in business and solve its problems, as indicated in Signature's initial response and reservation of rights (ECF No. 24), which is incorporated herein by reference, Signature does not want to find itself in the position of being prejudiced, by having its cash collateral depleted and paid to subordinate creditors, at Signature's expense.

12. For all of the foregoing reasons, Signature objects to the continued use of its cash collateral beyond the Termination Date. Signature reserves all of its rights and remedies with respect to the foregoing.

Dated: Uniondale, New York
       November 20, 2017

                                           WESTERMAN BALL EDERER MILLER
                                           ZUCKER & SHARFSTEIN, LLP

                                           By: */s/ Mickee M. Hennessy*
                                                John E. Westerman, Esq.
                                                Mickee M. Hennessy, Esq.
                                           1201 RXR Plaza
                                           Uniondale, New York 11556
                                           (516) 622-9200

                                           *Counsel to Signature Bank*

01694147.DOCX