Hearing Date: November 28, 2017 at 2:00 p.m.

Kennedy, Jennik & Murray, P.C.
113 University Place
New York. New York 10003
Telephone: (212) 358-1500
Facsimile: (212) 358-0207

Attorneys for Plaintiff Benefit Fund Trustees in
*Moore v. Navillus Tile, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                              :     Chapter 11
                                                    :
Advanced Contracting Solutions LLC,                 :     Case No. 17-13147 (SHL)
                                                    :
                    Debtor.                         :
---------------------------------------------------------------x

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
PLAINTIFF BENEFIT FUND TRUSTEES IN *MOORE V. NAVILLUS, TILE, INC.*
REGARDING DEBTOR'S INTERIM AND FINAL DIP FINANCING MOTION**

**INTRODUCTION**

1.  This chapter 11 bankruptcy case was filed because of a judgment obtained in *Moore v. Navillus Tile, Inc.* No. 14-CV-8326 (S.D.N.Y.) by four groups of employee benefit funds ("*Moore* Plaintiffs"). (Dkt. No. 2, ¶¶ 17-18.) The *Moore* Plaintiffs submit this limited objection and reservation of rights with respect to the Debtor's motion to authorize DIP financing from Liberty Mutual in the amount of $2.5 million to enable it to explore an expedited sale of its assets which it believes makes "eminent sense". See Motion Dkt No. 67, para 26.

2.  ACS has filed a motion for approval of proposed DIP financing which contends that the Union Funds are seeking to "sink" ACS and promises to continue to contest the Union Funds' claims. The Union Funds claims against ACS are soundly based on the res judicata consequence of ACS having been found by Chief Judge McMahon to be an alter ego of Navillus:

"ACS was set up as and at all relevant times was Navillus' alter ego. Decision p. 55. ACS has not articulated a single basis on which it could creditably appeal the thorough and compelling determination by Judge McMahon with respect to its alter ego status.

3.   The proposed budget for the ACS post-petition expenses reveals that ACS is in a death spire. The forecasted performance for budget weeks 4 through 7 show reductions in the net cash available for operating and restructuring expenses, a net loss in cash flow operations in that period of ($3,336,814), suspiciously low restructuring fees in that period of $350,000 and, after a cash infusion from the DIP financing of $2,500,000, net cash at end of that period of $897,418, showing that without the DIP financing ACS is functionally insolvent, without the impact of the Union Funds' claims. In that regard, it is telling that the alleged equity owners of ACS were unwilling to backstop a financing shortfall of $246,000 last week – if they know the ship is sinking entirely independently of the Union Fund claims, who is likely to pay even a fraction of their value for the assets of ACS?

4.   The Union Funds also have a concern that any sale of the assets of ACS would not be to a bona fide, good faith purchaser but rather to another Navillus related insider who will profit from the acquisition of these 15 projects while giving very little to the ACS estate. The consistent and repeated findings that the principals of ACS and Navillus engaged in perjury and various types of fraud in their schemes to operate ACS as a non-union alter ego of Navillus strongly suggests that their next move will be to find or create another entity to cheaply purchase the assets of ACS in a manner that allows the principals of ACS and Navillus to benefit.

5.   The Motion seeks approval of DIP financing from Liberty Mutual. But Liberty Mutual was not a neutral party in the events that lead to the judgment by the *Moore* Plaintiffs against Navillus and ACS. Paragraph 199 of the September 20, 2017 decision discusses as an

example of additional conduct relevant to the alter ego finding against Navillus that in January, 2014 (only six months after Advanced Contracting Solutions, LLC ("ACS") was established and before it had completed any significant work projects), Liberty Mutual provided ACS with a bonding assurance letter to assist it in securing a large construction project that falsely asserted that Liberty Mutual had supported ACS on single contracts in excess of $150 million and an aggregate work program of $400 million. (Chief Judge Colleen McMahon's decision in *Moore v. Navillus* attached hereto as Exhibit A, ¶ 199, at 53; Liberty Mutual bonding assurance letter regarding ACS attached hereto as Exhibit B.) Liberty Mutual was fraudulently including work done by Navillus as part of its history of dealing with the ACS, the adjudicated alter ego of Navillus. In addition, the record in *Moore v. Navillus* is replete with evidence that the bonding agents for Liberty Mutual, Construction Risk Partners, were intimately involved in a scheme by Donal O'Sullivan to purchase options to acquire ACS. (Ex. A; Construction Risk Partners Correspondence dated June 10, 2014 attached hereto as Exhibit C.) Liberty Mutual was a co-conspirator with Navillus in connection with the alter ego conduct by Navillus rather than an arm's length business associate, and substantial disclosure and discovery is necessary before any assertion that these discussions were at arm's length can be credited by this Court.

6.      The proposed DIP Carve Out is woefully inadequate in the amounts it reserves for Unsecured Creditors Committee counsel, an Unsecured Creditors Committee financial advisor, and, if necessary, a Chapter 11 Trustee. The proposed budget of professional fees shows a carve out of only $50,000 for Unsecured Creditors Committee counsel, reserves nothing for an Unsecured Creditors Committee financial advisor and allows only $25,000 for a Chapter Seven Trustee. Since it appears that a principal issue in this proceeding will be the prosecution of avoidance and preference actions, the Carve Out also fails to include an appropriate allocation

3

for post-reorganization avoidance actions. While we are aware that these issues will be discussed and resolved in the context of the Final Order, they are unacceptable even as an initial bargaining position for the Debtor.

7. This grim financial picture gives little likelihood that the owners of ACS will be able to achieve a sale that benefits its creditors. It may be necessary to move to convert this Chapter 11 filing to a Chapter 7 under § 1112 given the ACS recognition that it is suffering a substantial loss to or diminution of its estate and that there is no reasonable likelihood of rehabilitation and other similar grounds for such conversion.

8. Given the adjudication of ACS as an alter ego of Navillus, and the joint and several liability imposed on ACS for failing to make benefit fund contributions for its hours worked, the projected operating statements and budget of the Debtor are incomplete since they do not include the obligation of ACS to make contributions to the *Moore* Plaintiffs' benefit funds.

9. Finally, the Moore Plaintiffs object to these critical motions being set for determination on little notice and without the presence of an Unsecured Creditors Committee to protect the interests of unsecured creditors of ACS.

## **CONCLUSION**

For the foregoing reasons, The *Moore* Plaintiffs therefore present this limited objection to the ACS DIP financing motion on the grounds set forth above.

Dated: November 28, 2017
    New York, NY

KENNEDY, JENNIK & MURRAY, P.C.

By: _____/s/_____
    Thomas M. Kennedy
    113 University Place, 7th Floor
    New York, New York 10003

4

                (212) 358-1500 Telephone
                (212) 358-0207 Facsimile