**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Fred Stevens
Brendan M. Scott
Andrew S. Richmond

*Proposed Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                          :
                                                               :    Chapter 11
ADVANCED CONTRACTING SOLUTIONS, LLC,:
                                                               :    Case No. 17-13147 (SHL)
                           Debtor.                   :
----------------------------------------------------------------x

**DEBTOR'S PRELIMINARY OBJECTION TO GILBANE RESIDENTIAL
CONSTRUCTION, LLC'S EMERGENCY MOTION FOR (A)
CONFIRMATION OF THE INAPPLICABILITY OF THE AUTOMATIC
STAY OR (B) IN THE ALTERNATIVE, RELIEF FROM THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

Advanced Contracting Solutions, LLC ("ACS" or the "Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case"), by and through its proposed attorneys, Klestadt Winters Jureller Southard & Stevens, LLP, hereby submits this preliminary objection (the "Preliminary Objection") to Gilbane Residential Construction, LLC's ("Gilbane") *Emergency Motion for (A) Confirmation of the Inapplicability of the Automatic Stay or (B) In the*

*Alternative, Relief From the Automatic Stay Pursuant to 11 U.S.C. Section 362(d)* [ECF Docket No. 63] (the "Motion").[1]  In support of this Objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

Gilbane is the construction manager with respect to the 42 Trinity Project.  Gilbane and ACS are parties to the Agreement, pursuant to which ACS will provide certain Work including the installation of superstructure concrete and provision of a tower crane at the 42 Trinity Project in exchange for payments totaling $25.95 million.  ACS believes that after payment of all budgeted trade vendors, work and related costs in connection with completion of the Work, there is potential profit to ACS under the Agreement of approximately $2.5 million.  Accordingly, the Agreement has intrinsic value to ACS, as well as any potential purchaser of ACS's business, which ACS needs to protect for the benefit of its estate and all stakeholders.

To be clear, ACS highly values its relationship with Gilbane and wants to continue working with Gilbane to find a mutually advantageous solution to these issues.  ACS understands the issues that Gilbane and the owner of the 42 Trinity Project are dealing with.  ACS is more than willing to meet with the owner and its construction lender to address their concerns, or take such other actions as may be reasonable to assure Gilbane, the owner and its lender of ACS's intentions and ability to perform the Work.  However, ACS is compelled to contest the Motion in order to protect the estate's significant financial interest in the Agreement.

In ACS's view, Gilbane is in substance impermissibly seeking to terminate the Agreement pursuant to its *ipso facto* clause and the Motion must be denied on that basis.  Further, Gilbane has failed to demonstrate that the automatic stay does not apply to its termination of the Agreement, or alternatively that relief from the stay to terminate the Agreement is warranted.  Accordingly, the Motion must be denied in all respects.

---

[1] Capitalized terms not herein defined shall have the meanings ascribed to them in the Motion.

## BACKGROUND

1. On November 6, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 Case.

2. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. As of the date hereof, no creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case.

## ARGUMENT

### A. Gilbane is Seeking to Terminate the Agreement Pursuant to its *Ipso Facto* Clause

4. Gilbane's concern with the Debtor's financial situation started pre-petition, after the U.S. District Court for the Southern District of New York entered a judgment against ACS and others in the amount of $73.4 million on September 22, 2017 (the "Union Judgment"), and the supporting Findings of Fact, Conclusions of Law, and Verdict on September 20, 2017, in the matter of *Terrence Moore, et al. v. Navillus Tile, Inc., et al.* On October 4, 2017, Gilbane sent a letter to ACS, a copy of which is attached hereto as Exhibit A (the "October 4 Letter"), where it cited to Section 9.4 of the Agreement which provides that ACS is in default of the Agreement if it were to:

> become insolvent, enter[s] bankruptcy either voluntarily or involuntarily, [or has] a receiver appointed or make[s] an assignment for the benefit of creditor;" or "materially chance[s] its financial condition, transfer[s] any material assets, change[s] control or management without Construction Manager's prior written consent . . . .

(the "Ipso Facto Clause"). In its letter, Gilbane requested that ACS provide adequate assurance of its ability to perform under the Agreement, and reserved "all rights and remedies under the [Agreement]."

3

5.      In the Motion, Gilbane is very careful not to cite the Ipso Facto Clause as a basis for seeking to terminate the Agreement, knowing full well that *ipso facto* provisions in contracts, which modify the contracting parties' relationships due to the filing of a bankruptcy petition, are "broadly unenforceable" under the Bankruptcy Code. U.S. Bank Trust Nat'l Assoc. v. AMR. Corp. (In re AMR Corp.), 730 F.3d 88, 106 (2d Cir. 2013) (quoting Reloeb Co v. LTV Corp. (In re Chateaugay Corp.), No. 92 CIV. 7054(PKL), 1993 WL 159969, at *5 (S.D.N.Y. May 10, 1993)); see In re Lehman Bros. Holdings Inc., 422 B.R. 407, 414 (Bankr. S.D.N.Y. 2010) (defining *ipso facto* clauses as those which "would seek to modify the relationships of contract parties due to the filing of a bankruptcy petition"). An *ipso facto* clause extends to contracts which are conditioned on the insolvency or financial condition of the debtor. See Nemko, Inc. v. Motorola, Inc. (In re Nemko, Inc.), 163 B.R. 927, 938 n. 5 (Bankr. E.D.N.Y. 1994).

6.      Gilbane argues that because it has the right to terminate the Agreement for convenience, it can exercise its "at-will" termination rights even post-petition. That exact argument was put forth, and subsequently rejected, in In re National Hydro-Vac Indus. Servs., L.L.C., 262 B.R. 781 (Bankr. E.D. Ark. 2001). There, the bank sought relief from the automatic stay to terminate its Bank Card Merchant Agreement with the debtor. Amongst its arguments, the bank claimed that if the contract is assumed, it is terminable-at-will and, therefore, it would be futile to deny relief from the stay. Id. at 786. In response, the court noted "[h]owever, caselaw considering executory contracts with termination clauses supports the Debtor's position that to enforce the clause in this case would violate the Congressional policy undergirding 11 U.S.C. § 365(e)(1) (1994)." Id. The court noted that that section "expressly invalidates *ipso facto* and other bankruptcy termination clauses" which are predicated upon the debtor's financial

4

condition, the debtor's bankruptcy filing or the appointment of a bankruptcy trustee. Id. (quoting 3 Collier on Bankruptcy ¶ 365.07 (Lawrence P. King et al. eds, 15th ed. Rev.2000)).

7. Similarly, in In re B. Siegel Co., the court held that an insurer was not permitted to cancel the debtor's insurance policy even though it was terminable-at-will because the cancellation "contravened [the] expressed congressional policy" of section 365(e)(1). 51 B.R. 159, 163 (Bankr. E.D. Mich. 1985). Moreover, terminable-at-will provisions do not confer "an unrestricted right to cancel" a contract, but rather must be exercised in good faith. Id. at 164. Accordingly, the National Hydro-Vac court held that the bank's attempt to terminate the contract upon the debtor's filing its bankruptcy petition "at least raises the inference of bad faith on the part of the Bank." In re Nat'l Hydro-Vac Indus. Servs., L.L.C., 262 B.R. at 787. The court further noted that its conclusion is consistent with several other bankruptcy courts which denied relief from the stay to terminate a contract with an at-will termination clause. Id. (collecting cases).

8. Gilbane revealed the real underpinning of the Motion when it sent the October 4 Letter. The October 4 Letter did not cite the convenience clause that forms Gilbane's stated basis in the Motion for wanting to terminate the Agreement, or any other basis for that matter. Based upon its position in the October 4 Letter, it is clear that Gilbane's real reason for seeking to terminate the Agreement is the impermissible enforcement of the Ipso Facto Clause in violation of section 365(e) of the Bankruptcy Code. The Motion should be denied on that basis alone. To the extent the Motion survives ACS's contention that it is an attempt to impermissibly enforce the Ipso Facto Clause, the Court must next determine if the automatic stay applies and if so, whether relief from it is warranted.

5

## B. The Automatic Stay Applies and Should Not be Modified

### *(i) The Automatic Stay Applies*

9.       Gilbane argues in the Motion that the automatic stay does not even apply to its attempted post-petition exercise of its claimed contractual right to cancel the Agreement for any reason.  ACS disagrees.  The automatic stay "is one of the statutory cornerstones of the bankruptcy and reorganization process."  In re NextWave Pers. Commc'ns Inc., 244 B.R. 253, 266 (Bankr. S.D.N.Y 2000).  The stay "'is exceedingly broad in scope' and 'should apply to almost any type of formal or informal action against the debtor or the property of the estate.'" Delpit v. Comm'r of Internal Revenue Serv., 18 F.3d 768, 771 (9th Cir. 1994) (quoting *Collier on Bankruptcy*).  In addition to safeguarding the debtor's remaining assets, the stay ensures that all contractual "rights and remedies such as acceleration, forfeiture, imposition of judgement liens and foreclosure will be precluded" to enable the debtor to reorganize for the benefit of all creditors.  Id.  (citing In re Monroe Park, 18 B.R. 790, 791 (Bankr. D. Del. 1982) ("It is clear that Congress intended a financially troubled debtor to be able to reorganize after there has been a default and acceleration even in the face of state law which requires the consent of the creditor for cure and restatement once the entire amount has become due.")).  Similarly, the stay "bars a creditor from taking actions to exercise control over property of the estate or assess claims against the estate."  U.S. Bank Trust Nat'l Assoc. v. Am. Airlines, Inc. (In re AMR Corp.), 485 B.R. 279, 294 (Bankr. S.D.N.Y. 2013).  Accordingly, "[c]ourts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay."  Id. (quoting In re Enron Corp., 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003)).

10.       It is a violation of the automatic stay for a party to unilaterally cancel a contract with the debtor, even though the party had a valid reason for terminating the agreement. Computer Commc'ns, Inc. v. Codex Corp. (In re Computer Commc'ns, Inc.), 824 F.2d 725, 728

6

(9th Cir. 1987); <u>Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo)</u>, 805 F.2d 440, 445, 446 (1st Cir. 1986) ("Nowhere is it mentioned that section 362(b)(4) permits government agencies to enforce *contractual* rights against debtors without first seeking relief from the automatic stay. . . . The contract termination suit threatened to deprive [the debtor] of its principal asset, jeopardize its only opportunity for reorganization, and force it into chapter 7 liquidation proceedings.") (emphasis in original).

11.     In support of its motion, Gilbane cites to <u>Valley Forge Plaza Assocs. v. Schwartz, 114 B.R. 60</u> (E.D. Pa. 1990), for the proposition that that the automatic stay does not apply to a party's contractual rights, including its right to cancel a contract with the debtor. However, the decision, which relied upon the holding in <u>In re Heaven Sent Ltd. v. Commercial Union Ins. Co.</u>, 37 B.R. 597 (Bankr. E.D. Pa. 1984), noted that its conclusion was based upon that particular jurisdiction's rule and not necessarily applicable to other courts. <u>Id</u>. at 63 ("In this jurisdiction the clear rule, as stated above, is that the bankruptcy code will not prevent termination of a contract by its own terms."). The <u>Valley Forge</u> case is a Pennsylvania case and does not control here.

12.     The case law is clear that the Agreement is property of the estate and that the automatic stay applies and prevents Gilbane from terminating the Agreement for convenience. Accordingly, Gilbane's leading request in the Motion that the Court determine that the stay does not apply should be denied in its entirety. The next question is whether granting Gilbane relief from the stay is warranted.

7

*(ii) The Court Should Not Modify the Stay*

### a) The Agreement is Essential for a Successful Reorganization or 363 Sale

13.     The Agreement is essential to the Chapter 11 Case and contains significant intrinsic value to the Debtor of approximately $2.5 million.  The Agreement may be retained by ACS if it restructures where ACS could realize the profits and intrinsic value in the Agreement, or can be assigned by ACS under a sale.[2]  ACS's continued existence and potential reorganization, or its ability to sell its assets via a Section 363 sale, depends on preserving its existing jobs and contracts.  See Wallach v. Nowak (In re Sherlock Homes of W.N.Y., Inc.), 246 B.R. 19, 25–26 (Bankr. W.D.N.Y. 2000) ("Contract rights are assets of the estate, even though those contract rights would have limited or even no value to the debtor itself.").

14.     Gilbane's argument that ACS's likely liquidation rather than reorganization does not affect this analysis and is irrelevant to whether the Agreement is necessary for an effective reorganization for purposes of applying Section 362(g)(2).  In re Roxrun Estates, Inc., 74 B.R. 997, 1003 n. 12 (Bankr. SD.N.Y. 1987) ("We are mindful that property may be necessary for an effective reorganization even if the estate is being liquidated if that liquidation is occurring in the context of a chapter 11 case, for a liquidating plan is permissible in chapter 11.").

15.     Therefore, because the Agreement is essential to the Chapter 11 Case, the stay should not be modified.

### b) Any Balance of Hardships Favors the Debtor

16.     "Even if the Court found that cause existed to lift the automatic stay, the balance of hardships strongly favors maintaining the automatic stay.  Termination of the . . . Agreement[] would significantly impede [the debtor]'s ability to restructure, if not eliminate the possibility of

---

[2]  ACS does not concede that the Agreement is not assignable as a personal services contract as alleged by Gilbane in the Motion, but reserves such argument for further briefing on the Motion or in connection with an proposed sale.

8

a successful restructuring entirely, while severely impairing creditor recoveries." <u>Velo Holdings Inc. v. Paymentech, LLC (In re Velo Holdings Inc.)</u>, 475 B.R. 367, 390 (Bankr. S.D.N.Y. 2012). As previously noted, modification of the stay to permit termination of the Agreement would eliminate an asset believed to be worth as much as $2.5 million. To the extent that the value of the Agreement to ACS is contested, ACS is prepared to submit testimony to that effect.

17. Gilbane asserts that the 42 Trinity Project is in danger of losing its funding solely as a result of ACS's issues, and that this tips the equities in favor of Gilbane. However, those claims are currently unproven. Regardless, even if true, it would not warrant modification of the stay and the estate's guaranteed loss of a significant asset.

18. Based upon the foregoing, the Motion should be denied.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order denying the Motion in its entirety, and grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated: New York, New York
November 30, 2017

                          **KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Tracy L. Klestadt
Fred Stevens
Brendan M. Scott
Andrew S. Richmond
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
       fstevens@klestadt.com
       bscott@klestadt.com
       arichmond@klestadt.com

*Proposed Attorneys for Debtor and Debtor in possession*